IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge R. Brooke Jackson

Civil Action No. 1:20-cv-03035-RBJ

VAN SANT & CO., a Colorado corporation,

    Plaintiff,

v.

TOWN OF CALHAN, a municipality, et. al.,

    Defendants.

ORDER ON MOTIONS FOR SUMMARY JUDGMENT

    This matter is before the Court on the town defendants' motion for summary judgment (ECF No. 64) and added defendants' motion for summary judgment (ECF No. 65). For the reasons discussed below, the motions are GRANTED.

## I.  BACKGROUND

    This case involves a dispute over whether Van Sant & Co. ("VS" or "plaintiff") was wronged by members of two separate sets of defendants. The town defendants include the City of Calhan ("the City" or "Calhan") and three individuals in their official and individual capacities (Brent, Cameron, and Tyler Chaussee). The added defendants include three corporations (Continental Properties, Inc., Video Productions, Inc., and Dominion Development, Inc.) and three individuals (Annette, Calvin, and Blake Chaussee). VS accuses those defendants of entering a conspiracy with the town defendants to restrain trade and monopolize. VS also brought antitrust claims against the town defendants, but in addition, VS alleged that they violated its substantive due process and equal protection rights. During the periods at issue in

1

this case, Brent Chaussee was a member of the Planning and Development Committee (P&D), Cameron Chaussee was initially a member of the board of trustees[1] and later the mayor of Calhan, and Tyler Chaussee was a member of the board of trustees. ECF No. 72 at 14.

In 2007, Tom Brierton, the owner of VS, bought the land at issue in this suit. ECF No. 72 at 3. That land is located in the defendant City of Calhan ("the City" or "Calhan"). VS operated as a mobile home park on that land between 2007 and 2015. *Id*. In 2015, VS concluded that renting spaces to recreational vehicles (RVs) would be more profitable than continuing as a mobile home park—to that end, it began renting spaces to RVs in the fall of 2015. *Id*. at 4. In this period, VS housed both mobile homes and provided spaces for RVs.

Shortly after it began renting RV spaces, the town engineer of Calhan required VS to install water disposal equipment to prevent a backflow problem. *Id*. VS believes this equipment was unnecessary because there was no backflow problem. *Id*. The town also required VS to inform the town clerk whenever it rented a space to an RV. *Id*. VS believed that it was being treated differently from the other RV parks in town.

There are two other RV parks in Calhan: Jolly's RV & Tiny Home Park (Jolly's) and Cadillac Jack's. ECF No. 72-1 at 13–14. Jolly's has 15 RV spaces available for rent, and Cadillac Jack's has 37. *Id*. at 14. Cadillac Jack's is owned by Video Productions, Inc., which is owned by the AMC Video Trust. *See* ECF No. 72-8. The AMC Video Trust was created by added defendant Annette Chaussee. *Id*. Added defendant Calvin Chaussee, Annette's husband, is the named beneficiary of the trust, as are all descendants of Annette (who are named as beneficiaries following the deaths of Annette and Calvin). *Id*.

---

[1] The board of trustees is the local legislative body for Calhan.

When VS first began renting spaces to RVs, there was no ordinance preventing mobile home parks from renting spaces to RVs. ECF No. 72 at 14. By renting to RVs, VS began to compete directly with Cadillac Jack's and Jolly's. *Id*. In April 2016, the P&D recommended Ordinance 2016-09 to the board of trustees. *Id*. Town defendant Brent Chaussee was serving on the P&D at this time. *Id*. Brent is the son of Annette and Calvin Chaussee. *Id*. at 2. The board of trustees passed Ordinance 2016-09, which prohibited RVs in mobile home parks. *Id*. at 4. Town defendant Cameron Chaussee served on the board of trustees at that time and is the grandson of Annette and Calvin Chaussee. *Id*. at 4, 2. Shortly after Ordinance 2016-09 was passed, VS began receiving citations for violating it. ECF No. 72-13. VS then began to take steps to convert from a mobile home park to an RV park, which involved getting rid of all the mobile homes on the premises. ECF No. 72 at 14. At a March 12, 2018 town meeting (with then-mayor Cameron and town defendant Tyler Chaussee present), Mr. Brierton stated his intent to convert the VS mobile home park into an RV park. ECF No. 72-14.

In August 2018, VS's lawyer sent an email to the town attorney confirming that it could complete its transition to an RV park. ECF No. 72-16. The town attorney outlined the rules that VS would have to comply with as an RV park and indicated that due to an influx of new RV parks, the board of trustees was considering enacting new regulations for RV parks. *Id*. He advised that VS should be on the lookout for these new regulations. *Id*.

On October 9, 2018 the board of trustees enacted Ordinance 2018-13 ("the Ordinance"), which imposed regulations on new RV parks, some of which would have been very costly to implement. ECF No. 72-17. The Ordinance also provided that only RV parks that came into existence after November 30, 2018 needed to comply with the regulations. *Id*. Older RV parks needed to comply with the regulations only upon expansion or renovation of existing facilities.

*Id*.  There were only four members of the board of trustees present for the vote on Ordinance 2018-13, and only three voted on the Ordinance, with Cameron and Tyler Chaussee among them. ECF No. 72-16.  Neither Cameron nor Tyler disclosed any interest in Cadillac Jack's.  VS found that it did not have the funds to comply with the requirements of the Ordinance, nor did it have the funds to return to its function as a mobile home park.  ECF No. 72 at 6.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate where there is "no genuine dispute of material fact and the movant is entitled to judgement as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is genuine if there is "sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).  An issue of fact is material if it is essential to the proper disposition of the claim.  *Id.* (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)).

The movant bears the burden of showing a lack of evidence to support the nonmoving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  However, "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Id*. at 322.  "Conclusory statements or those based on speculation, conjecture, or surmise provide no probative value on summary judgment; nor may the nonmovant rely on 'mere reargument of his case or a denial of an opponent's allegation.'"  *Stuart v. Erickson Living Mgmt.*, No. 18-CV-01083-PAB-NYW, 2019 WL 7289016 at *2 (D. Colo. July 29, 2019) (quoting 10B Charles Alan Wright, et al., Federal Practice and Procedure § 2738 at 356 (3d ed. 1998)).

### III. THE ADDED DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The added defendants argue that they are entitled to summary judgment on plaintiff's claims because even if plaintiff had sufficient evidence of antitrust violations, the added defendants are immune from liability for those violations under the *Noerr-Pennington* doctrine. Plaintiff argues that the sham exception to that doctrine applies to the added defendants.

The *Noerr-Pennington* doctrine shields defendants from antitrust liability "for engaging in conduct (including litigation) aimed at influencing decision making by the government." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 556 (2014). Under the doctrine, even if the conduct by which defendants tried to influence governmental regulation was undertaken for the sole purpose of destroying competition, involved unethical business practices, or was specifically intended to hurt competitors, the defendants would be immune from antitrust liability. *See E. R. R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 138–45 (1961). The doctrine has its roots in the First Amendment jurisprudence—it "arises from the [Supreme] Court's conclusion that the Sherman Act was not intended to derogate the First Amendment right of citizens to petition the government for a redress of grievances." *GF Gaming Corp. v. City of Black Hawk, Colo.*, 405 F.3d 876, 883 (10th Cir. 2005).

The added defendants appear to believe that plaintiff is arguing primarily that *Noerr-Pennington* immunity does not apply because they engaged in illegal behavior. *See* ECF No. 81 at 5–7. However, I do not believe plaintiff raised such an argument in its response to the added defendants' motion for summary judgment. *See* ECF No. 73 at 8.

What I perceive to be plaintiff's primary argument is that added defendants' behavior was not actually petitioning the government for action, but rather engaging in commercial activity that had a political impact. *See id.* Added defendants respond that plaintiff's argument is inapplicable in this situation. I agree with the added defendants.

First, plaintiff does not explain how added defendants were engaging in commercial activity in seeking the passage of certain ordinances by the board of trustees. Even if added defendants only sought those ordinances indirectly and not with direct lobbying efforts, that is political activity with a commercial impact, not commercial activity with a political impact. *See Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492 (1988).

Second, *Allied Tube & Conduit Corp. v. Indian Head, Inc.*, which plaintiff cited to support its argument, is readily distinguishable from the facts in this case. There, the activity at issue "did not take place in the open political arena, where partisanship is the hallmark of decisionmaking, but within the confines of a private standard-setting process." *Id*. at 507. Specifically, the case involved lobbying of the National Fire Protection Association (the association), which was a "private, voluntary organization with more than 31,500 individual and group members representing industry, labor, academia, insurers, organized medicine, firefighters, and government." *Id*. at 495. The association published a National Fire Code which many state and local political bodies use in determining their fire codes. *Id*. Defendants had engaged in an effort to influence a certain section of the National Fire Code. *Id*. The Court found that the defendants were not immune under the *Noerr-Pennington* doctrine because the actions of the association were not political—they certainly had a political impact because of the widespread adoption of the standards in the National Fire Code by political entities, but the actions of the association were not themselves political. *Id*. at 507.

The situation in this case is different. The body that plaintiff claims was influenced was the board of trustees, which is the local political body of Calhan. The action to enact an ordinance regulating RV parks that the board of trustees engaged in was political—the actions of

6

the board of trustees may have had an effect on commercial matters, but they were not commercial themselves.

Even reading the facts in the light most favorable to plaintiff, there is no genuine dispute of material fact on the question of whether the added defendants are entitled to *Noerr-Pennington* immunity. To the extent that plaintiff argues there is a dispute over whether the board of trustees' actions in passing the ordinances at issue were political or commercial, that dispute is not genuine. A reasonable jury could not find that the actions of the board of trustees in voting to pass RV park regulations were commercial, nor does plaintiff even explain how those actions could be commercial rather than political. Plaintiff brought only antitrust claims against the added defendants. As the added defendants are immune from antitrust liability, they are entitled to summary judgment on Claims I and II. *See* ECF No. 31.

## IV. THE TOWN DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
### A. Antitrust Claims

Town defendants argue that they are entitled to immunity under the Local Government Antitrust Act ("LGAA") (15 U.S.C. §35) which provides that damages for antitrust violations may not be recovered from local governments or officials of local governments acting in their official capacities. Plaintiff argues that the individual town defendants are not protected by the LGAA because they were not acting in their official capacities in passing the ordinances complained of.

Courts have found that Congress intended the phrase "acting in an official capacity" in the LGAA "to be given broad meaning encompassing all 'lawful actions, undertaken in the course of a defendant's performance of his duties, that reasonably can be construed to be within the scope of his duties and consistent with the general responsibilities and objectives of his

7

position.'" *GF Gaming Corp.*, 405 F.3d at 885 (quoting *Sandcrest Outpatient Svcs., P.A. v. Cumberland County Hosp. Sys., Inc.*, 853 F.2d 1139, 1145 (4th Cir.1988)). Whether defendants were acting in an official capacity is an objective inquiry. *See Sandcrest*, 853 F.2d at 1146–48 ("The LGAA makes no provision for consideration of a defendant's motives.").

Plaintiff argues that because the individual town defendants violated Colorado ethics rules by voting on the Ordinance without disclosing their conflict of interest, they did not act lawfully and thus are not entitled to immunity under the LGAA. *GF Gaming* states that LGAA immunity only applies to "lawful actions" taken by officials. Plaintiff contends that the individual town defendants' actions violated Colo. Rev. Stat. Ann. § 24-18-103. Under that statute, a local government official whose conduct departs from his fiduciary duties can be liable for civil damages in addition to potential criminal charges. Section 24-18-109(3)(a) provides that:

> A member of the governing body of a local government who has a personal or private interest in any matter proposed or pending before the governing body shall disclose such interest to the governing body and shall not vote thereon and shall refrain from attempting to influence the decisions of the other members of the governing body in voting on the matter.

Evidence that a member has engaged in this behavior beyond a reasonable doubt is sufficient to succeed on a claim for breach of fiduciary duty and public trust. *Id*.

Town defendants raise three arguments in response. First, they argue that if plaintiff believed that Ordinance 2018-13 was unlawfully enacted, it should have filed for declaratory relief in state court to have it declared invalid. ECF No. 64 at 10. They argue that this Court lacks jurisdiction to make findings of unlawful activity under C.R.S. §24-18-109 without a proper cause of action or underlying state court judgment. *Id*. As part of this first argument, they also argue that the Court should decline to allow plaintiff to proceed on an antitrust claim

8

based on an alleged state regulatory provision because doing so would implicate federalism concerns.

Second, they argue that plaintiff has not established any unlawful activity of any town defendants. *Id*. at 11. They argue that none of the town defendants had any financial interest in the passage of Ordinance 2018-13. *Id*.

Third, town defendants argue that the plain language of the LGAA does not state that it only applies to "lawful actions" undertaken by local officials. *Id*. at 12. They argue that "reading into the statute an additional requirement of solely 'lawful' activity would defeat the intent of the statute." *Id*.

1. The Plain Language of the LGAA

Town defendants argue that the plain language of the LGAA does not include a requirement that local officials be acting lawfully to receive LGAA immunity. Though there is language defining "official capacity" from *GF Gaming* indicating that LGAA immunity only protects "lawful actions," that language must be read in context. The full language reads, "lawful actions, undertaken in the course of a defendant's performance of his duties, that reasonably can be construed to be within the scope of his duties and consistent with the general responsibilities and objectives of his position." *GF Gaming Corp.*, 405 F.3d at 885. Defendants argue that, in context, "lawful action" is more appropriately interpreted as actions that defendants had the legal authority to take. ECF No. 82 at 3–4.

I agree. The intent of the LGAA was to shield local governments from antitrust liability. *See Sandcrest*, 853 F.2d at 1142 (4th Cir. 1988) (citing to H.R. Rep. No. 965, 98th Cong., 2d Sess. 2 for the proposition that the LGAA was a response to the filing of "an increasing number of antitrust suits, and threatened suits, that could undermine a local government's ability to

govern in the public interest.")).  Congress intended the LGAA to be broad.  It would make sense that, as long as local officials act within their legal authority, they would retain immunity under the LGAA.[2]

Defendants are correct—there is no genuine dispute of material fact on the issue of LGAA immunity.  Though there are genuine disputes of material fact over whether the town defendants violated the terms of C.R.S. § 24-18-109, there is no dispute over whether town defendants had the legal authority to vote to enact Ordinance 2018-13.  Section 24-18-109 does not provide that a local official loses his authority to enact legislation when he fails to comply with its terms.  The remedy it provides is a civil or criminal suit for breach of fiduciary duty or public trust brought by the state on behalf of the people.  *See* C.R.S. 24-18-103.  Were this a suit for breach of fiduciary duty there would be a genuine dispute of material fact—in fact, it appears on the record before me that at least some of the town defendants did engage in some misconduct.  But the claims at issue are antitrust claims.  There is no genuine dispute of material fact that town defendants did not have the authority to issue Ordinance 2018-13—summary judgment is warranted on the antitrust claims because town defendants acted in their official capacity and are entitled to LGAA immunity.

---

[2] By analogy, the courts have reached similar results for the *Parker* and *Noerr-Pennington* doctrines.  Though *Parker* and *Noerr-Pennington* immunity are not the same as LGAA immunity, the United States Supreme Court's treatment of those doctrines can help inform my analysis of the LGAA—the goal of each is to ensure that antitrust laws regulate business activity rather than politics.  *See City of Columbia v. Omni Outdoor Advert., Inc.*, 499 U.S. 365, 383 (1991)

In *City of Columbia*, the Court found that neither the *Parker* nor the *Noerr-Pennington* doctrines had an exception for conspiracy—that is to say, defendants entitled to either *Parker* or *Noerr-Pennington* immunity did not lose that immunity because they entered into a conspiracy to commit an antitrust violation.  *See* 499 U.S. 365, 383.  As was the case for *Parker* and *Noerr-Pennington* immunity, if there were a conspiracy (or general unlawfulness) exception to the LGAA, it would almost never be applicable—many antitrust violations involve an allegation of conspiracy, which is illegal.  For the same reasons that there is no conspiracy exception to the *Parker* and *Noerr-Pennington* doctrines, it does not make sense for there to be a conspiracy or general unlawfulness exception for the LGAA.

2. Jurisdiction

Though I found above that town defendants are entitled to LGAA immunity, one more argument raised by town defendants requires addressing. Lack of subject matter jurisdiction can be raised at any point during litigation and if this Court lacked subject matter jurisdiction over this or any claim raised by plaintiff, I would have to dismiss this case. Town defendants argue that this Court "lacks jurisdiction to make findings of unlawful activity under C.R.S. § 24-18-109 without a proper cause of action or underlying state court judgment." ECF No. 64 at 10. I find no law to support this contention, nor do the town defendants cite any. *See id*. In fact, in their reply, they assert that this Court does have jurisdiction over plaintiff's antitrust claims. ECF No. 82 at 2. I find that this Court does have subject matter jurisdiction over plaintiff's antitrust claims.

**B. Constitutional Claims**

1.  Causation as to Brent Chaussee

"Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

Town defendants argue that all claims against Brent Chaussee should be dismissed because he was only a member of the P&D and not the board of trustees. An element of every claim under § 1983 is causation. Town defendants argue that Brent could not have caused plaintiff's injury because he did not have the power to enact Ordinance 2018-13—he only recommended it as a member of the P&D. Plaintiff responds that "[w]ithout those [P&D] recommendations in which Brent Chaussee participated, none of those Ordinances would have been enacted by the [board of trustees] with Cameron and Tyler Chaussee's participation." ECF

11

No. 72 at 12. Plaintiff does not cite to any evidence for this proposition. *See id*. Causation is an element of plaintiff's § 1983 claims on which it will bear the burden at trial. Plaintiff has presented no evidence that Brent's actions on the P&D caused its injury. Summary judgment is appropriate for all claims against Brent.

  2. <u>Legislative Immunity</u>

Legislators are entitled to absolute legislative immunity from liability under § 1983 for "legislative activities." *Bogan v. Scott-Harris*, 523 U.S. 44, 53 (1998). To determine if an activity was legislative, courts examine the functions defendants were performing when the actions at issue occurred and the nature of those actions. *See Kamplain v. Curry Cnty. Bd. of Comm'rs*, 159 F.3d 1248, 1251 (10th Cir. 1998). While local legislators are entitled to absolute legislative immunity for legislative activities, localities themselves are not. *See id*.

Town defendants argue that they are immune from liability in this case because the actions that plaintiff complains of were legislative in nature. For defendants Tyler and Cameron Chaussee, this inquiry is straightforward. They were members of the board of trustees and voted to enact Ordinance 2018-13. That was a legislative activity—they were members of a legislative body voting on a matter of public policy. Plaintiff's only argument to the contrary is that because the individual town defendants "were conspiring to deprive Van Sant of its property rights to protect their family business" and were doing so in violation of state ethics laws, their actions could not have been legislative in nature. ECF No. 72 at 17. However, those considerations have no place in determining the applicability of legislative immunity. Tyler and Cameron's motives behind their votes are irrelevant. Their votes to enact Ordinance 2018-13 were legislative activity, and they are entitled to absolute legislative immunity for those votes. Summary judgment in their favor is appropriate.

3. <u>The City of Calhan</u>

"A municipality cannot be liable for constitutional violations unless its officers committed a constitutional violation." *Jennings v. City of Stillwater*, 383 F.3d 1199, 1201 n.1 (10th Cir. 2004). As a result, even though the Tyler and Cameron Chaussee cannot be liable for any of the alleged constitutional violations, I must determine if there is a genuine dispute of material fact on whether Tyler or Cameron Chaussee violated plaintiff's constitutional rights to determine whether plaintiff's claims against the City can proceed.

    a. <u>Alleged Violation of Plaintiff's Substantive Due Process Rights</u>

The Fourteenth Amendment proscribes a state from, among other things, depriving a party of "property without due process of law." U.S. Const. amend. XIV, § 1. "Substantive due process ensures the state will not deprive a party of property for an arbitrary reason regardless of the procedures used to reach that decision." *Hyde Park Co. v. Santa Fe City Council*, 226 F.3d 1207, 1210 (10th Cir. 2000). To prevail on a due process claim for a deprivation of property, a plaintiff must show that a defendant's actions deprived it of a protectable property interest. *See id.* "Property" in the context of the Due Process Clause is defined as a "legitimate claim of entitlement" to some benefit. *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). "An abstract need for, or unilateral expectation of, a benefit does not constitute 'property.'" *Hyde Park*, 226 F.3d at 1210 (citing *Board of Regents*, 408 U.S. at 577). A benefit is not a protected entitlement if government officials may grant or deny it in their discretion. *See, e.g., Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 462–463 (1989). "Constitutionally protected property interests are created and defined by statute, ordinance, contract, implied contract and rules and understandings developed by state officials." *Hulen v. Yates*, 322 F.3d 1229, 1240 (10th Cir. 2003).

13

Substantive due process "guards against arbitrary legislation by requiring a relationship between a statute and the government interest it seeks to advance." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1181 (10th Cir. 2009). To show a legislative violation of substantive due process where an enactment infringes on a fundamental right, the infringement must be narrowly tailored to serve a compelling government interest. *Id*. (citing *Washington v. Glucksberg*, 521 U.S. 702, 721, (1997)). To show a legislative violation of substantive due process where an enactment infringes on a lesser right, the infringement must bear a rational relation to a legitimate government interest. *Id*.

Town defendants argue that plaintiff cannot succeed on his substantive due process claim because it has not shown that Ordinance 2018-13 infringed on its fundamental right to property, and it has not shown that the Ordinance did not bear a rational relation to a legitimate government interest. Plaintiff argues that Ordinance 2018-13 infringed on its fundamental right to property, either under federal constitutional law or under C.R.S. 38-1-101(1)(a), which proscribes the state taking of private property without the owner's consent, and the enactment was not rationally related to a legitimate government interest.

Plaintiff did not have "a legitimate claim of entitlement" (a federally recognized property interest) to operate as an RV park under the ordinances existing prior to the enactment of Ordinance 2018-13. Reading the facts in the light most favorable to plaintiff as the non-moving party, plaintiff informed the City of its intention to convert entirely to an RV park following the passage of Ordinance 2018-5 (which prohibited RV parking in manufactured home parks) in March of 2018. Plaintiff asked the city attorney in August 2018 if there were any restrictions on its conversion from mobile home park to an RV park. The city attorney answered that there were some existing regulations and warned plaintiff that due to an influx of inquiries regarding new

RV parks in town, the board of trustees was considering adopting new regulations regarding RV parks. ECF No. 72-15. The city attorney advised that plaintiff may want to "stay aware of the potential for future regulations" that could apply to its planned park. *Id*. Then on October 9, 2018, the board of trustees enacted Ordinance 2018-13, which applied to all *new* RV parks after November 30, 2018.

Entitlements protected by substantive due process are "created and defined by statute, ordinance, contract, implied contract and rules and understandings developed by state officials." *Hulen*, 322 F.3d at 1240. The city attorney made clear that there were some regulations in existence that might affect plaintiff's plans for an RV park and that more regulations regarding RV parks were being contemplated by the board of trustees. The understanding developed by the city attorney was not unequivocally that plaintiff would be able to proceed with its plans under the current regulations. Further, there was no law or ordinance on the books stating that RV parks would be subject to limited regulation or any special procedures for adopting regulations applicable to RV parks.

Plaintiff also argues that it had fundamental property rights created and defined by Colorado statute—the state law says that "without the consent of the owner of the property, private property shall not be taken or damaged by the state or any political subdivision for a public or private use without just compensation." C.R.S. 38-1-101(1)(a).

Under this section, "[a] taking occurs when an entity clothed with the power of eminent domain substantially deprives a property owner of the use and enjoyment of that property." *City of Northglenn v. Grynberg*, 846 P.2d 175, 178 (Colo. 1993) (citing *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1018 (1992) (when owner called upon to sacrifice all economically beneficial uses of real property to the common good, owner has suffered a taking)).

15

A taking can be achieved "by a legal interference with the physical use, possession, enjoyment, or disposition of property, or by acts which translate to an exercise of dominion and control by a governmental entity." *Id*. at 182. "For a governmental action to result in a taking, the consequence of the action which is alleged to be a taking must be at least a direct, natural or probable result of that action." *Trinity Broad. of Denver, Inc. v. City of Westminster*, 848 P.2d 916, 921 (Colo. 1993).

I find that Ordinance 2018-13 did not infringe on plaintiff's fundamental property right as defined in C.R.S. 38-1-101. By enacting the Ordinance, town defendants interfered with plaintiff's enjoyment of property, but plaintiff has not introduced evidence to show that the Ordinance deprived the property of all economically beneficial uses. After the passage of the 2016 Ordinance, plaintiff was forced to remove all mobile homes from his property if it was to function as a RV park. It was in the process of doing so when the board of trustees passed Ordinance 2013-18 which would have required even more changes to the property before it could be an RV park. While these ordinances certainly inconvenienced plaintiff and made the use to which it wanted to put the property prohibitively expensive for it, they did not deprive the property of all economically beneficial uses. Plaintiff has not even alleged that there are no economically beneficial uses the property could be put to—it has only alleged that the expense of finishing the conversion to the RV park or changing the property back into a mobile home park is beyond its means. I cannot find that town defendants infringed plaintiff's property rights under C.R.S. 38-1-101.

Because Ordinance 2018-13 did not infringe upon a fundamental right, plaintiff can only succeed on its substantive due process claim if the infringement did not bear a rational relation to a legitimate government interest. Plaintiff argues that Ordinance 2018-13 was not rationally

related to a legitimate government interest because the Ordinance was so underinclusive. The two existing RV parks in Calhan are not regulated by the Ordinance. Plaintiff asserts that there was no evidence that there was an "influx" of new RV parks (as was asserted in Ordinance 2018-13), and that its RV park was the only new park in contemplation. Plaintiff argues that the Ordinance was not a rational way to achieve the goal of protecting health, safety, and welfare because only plaintiff's park would have been required to comply with the Ordinance.

Calhan is a small town with a population around 700—there would be no need for thousands or even hundreds of RV spaces. ECF No. 72-1 at 3. Cadillac Jack's has 37 spaces available for rent in its park. *Id*. at 14. Jolly's has 15 spaces for rent. *Id*. Plaintiff's proposed park would have had 34 spaces. *Id*. at 15. If plaintiff had been able to complete the transition to an RV park, roughly 60% of the RV spaces in Calhan would not have been subject to Ordinance 2018-13. As it is, 100% of the RV spaces are not subject to the Ordinance.

Town defendants cite *City of New Orleans v. Dukes*, 427 U.S. 297, 305 (1976) for the proposition that grandfathering provisions do not defeat the stated rationale of legislation because "a legislature need not 'strike at all evils at the same time.'" *Id.* (quoting *Semler v. Dental Examiners*, 294 U.S. 608, 610 (1935)). This is an overstatement of *Dukes*: the Court held in *Dukes* that grandfathering provisions do not *always* defeat the stated rationale of legislation, not that grandfathering provisions could *never* defeat the stated rationale of legislation. *See id*.

However, I cannot say that Ordinance 2018-13 bears *no* rational relationship to a legitimate government interest. Protecting the health and safety of the citizens of Calhan is a legitimate government interest, and plaintiff does not argue that it is not. Though the Ordinance is highly underinclusive—it fails to regulate both existing RV parks in Calhan—it would promote health and safety by requiring any new RV parks in Calhan to adopt measures to that

end. There is a rational relationship between the Ordinance and the legitimate government interest, albeit a tenuous one. Even reading the facts in the light most favorable to plaintiff, there are no remaining genuine disputes of material fact, and town defendants have shown they are entitled to judgment as a matter of law on this claim.

### b. Alleged Equal Protection Violation

Equal protection jurisprudence has traditionally been concerned with governmental action that disproportionally burdens certain classes of citizens. *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1216 (10th Cir. 2011). However, the United States Supreme Court has held that equal protection claims also exist for a "class of one" "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). "The paradigmatic 'class of one' case, sensibly conceived, is one in which a public official, with no conceivable basis for his action other than spite or some other improper motive (improper because unrelated to his public duties), comes down hard on a hapless private citizen." *Kan. Penn Gaming*, 656 F.3d at 1216 (quoting *Lauth v. McCollum*, 424 F.3d 631, 633 (7th Cir. 2005)). To show that others were similarly situated, a plaintiff must show that the others were "similarly situated in every material respect." *Id*. (quoting *Jicarilla Apache Nation v. Rio Arriba County*, 440 F.3d 1202, 1210 (10th Cir. 2006)).

Town defendants argue that summary judgment is warranted because plaintiff has not shown that it is similarly situated to Cadillac Jack's and Jolly's, or that Ordinance 2018-13 was not rationally related to a legitimate government purpose.[3]

---

[3] Town defendants also argue that "[plaintiff] admits in its Response the Town's RV Ordinance is 'legitimate in the abstract'—an admission that dooms its equal protection claim." ECF No. 82 at 9. That is not right. Just because a law does not discriminate on its face does not mean that it does not violate the

First, "the degree to which others are viewed as similarly situated depends substantially on the facts and context of the case." *Jennings v. City of Stillwater*, 383 F.3d 1199, 1214 (10th Cir. 2004). Reading the facts in the light most favorable to plaintiff, I find a reasonable jury could hold that plaintiff was similarly situated to the other RV parks in Calhan. Though it had not finished its transition from joint RV/mobile home park to solely an RV park, it was on its way. ECF No. 19 at ¶13. Plaintiff had made clear to the City its intention to convert to an RV park. A reasonable jury could find that the remainder of some mobile homes that plaintiff was actively working to remove was not a material difference between plaintiff and Cadillac Jack's and Jolly's.

However, though the dispute of fact on whether plaintiff was similarly situated to the other RV parks in town is genuine, it is not material because plaintiff has failed to show that Ordinance 2018-13 was not rationally related to a legitimate government interest, which is fatal to its equal protection claim. This analysis is the same as I performed above in the substantive due process setting. Though the Ordinance is highly underinclusive, I cannot find that it is so underinclusive that it bears *no* rational relationship to the stated government purpose. Based on the evidence before the Court, it appears that the town defendants, or at least Tyler and Cameron Chaussee, breached their ethical duties to the people of Calhan by enacting the Ordinance without disclosing their interests, but the fact that they likely engaged in misconduct is not

---

equal protection clause. As the Tenth Circuit put it in *SECSYS, LLC v. Vigil*, 666 F.3d 678, 689 (10th Cir. 2012):

> After all, and as we've seen, in the typical equal protection case the plaintiff will not be able to show that the challenged rule discriminates on its face or that direct evidence of discrimination exists. Those who wish to use the law to discriminate against others are often wilier than that. Often, an equal protection plaintiff will be able to show intentional discrimination only by circumstantial evidence, usually in the form of an inference of discrimination arising from the fact that his or her adverse treatment was such a stark outlier from an otherwise consistent pattern of favorable treatment in similarly situated cases.

relevant to the equal protection inquiry.  Summary judgment is warranted on the equal protection claim.

      c.  <u>Alleged Violation of the Takings Clause</u>

Though plaintiff argues that it stated a claim under the "takings clause" of the Fifth Amendment, town defendants respond that in plaintiff's second amended complaint, it did not raise such a claim.  Town defendants are correct—the second amended complaint does not contain a claim for relief under the Takings Clause of the Fifth Amendment.  *See* ECF No. 31.

## ORDER

1. The added defendants' motion for summary judgment (ECF No. 65) is GRANTED.
2. The town defendants' motion for summary judgment (ECF No. 64) is GRANTED.
3. As the prevailing parties, plaintiff is awarded its reasonable costs pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.

DATED this 18th day of May, 2022.

BY THE COURT:

*[signature: Brooke Jackson]*

_____
R. Brooke Jackson
Senior United States District Judge